# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN S. NELSON, on behalf of himself and all others similarly situated, | NO. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SERVICEMEMBERS CIVIL RELIEF ACT, 50 U.S.C. § 3901 *ET SEQ.* – CLASS ACTION** |
| vs. | |
| DITECH FINANCIAL, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiffs Brian S. Nelson, by and through his undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1.      This is an action brought pursuant to the Servicemembers Civil Relief Act of 2003 ("the SCRA"), 50 U.S.C. § 3901 *et seq.*, on behalf of a class of current and former servicemembers whose statutory rights to a 6% interest rate cap under the SCRA have been violated in connection with mortgage loans incurred by them and their spouses before they were called to active service. The lawsuit challenges Defendant Ditech Financial, LLC's policy or practice of refusing to apply the SCRA's 6% interest rate cap for periods of military service, including with respect to those periods

preceding the transfer of the servicing rights on those loans to Defendant.

2. The SCRA mandates that any obligation or liability that bears interest at a rate in excess of 6 percent per year that is incurred by a servicemember (including one incurred jointly with the servicemember's spouse) shall not bear interest at a rate in excess of 6 percent for the entire period of military service and one year thereafter, effective as of the date the servicemember was called to active service so long as the servicemember provides written notice and a copy of his or her military orders within 180 days of the end of military service. Despite this requirement, Defendant Ditech has adopted a policy or practice of not applying the statutory interest rate cap to mortgage loans for military service at least preceding the transfer of the servicing rights on those loans to Defendant. As a result of Defendant's policy and practice, servicemembers and their spouses in the Class either paid more interest on their loans or Ditech is seeking to require them to pay more interest than allowed under the SCRA. As a result of Defendant's policy and practice, the principal balances of the loans have been and continue to be inflated, and the interest incurred on them has been and continues to be excessive and improper under the SCRA.

3. This action seeks a declaration that Defendant's policy violates the SCRA, an injunction barring Ditech from continuing to apply the policy in the future, and an order to reform the  mortgage loans of Class members in accordance with the SCRA's 6% interest rate cap effective as of the date on which the Class member was called to military service, to forgive interest incurred at a rate in excess of 6% per year for any part of his or her period of military service, and/or to pay monetary damages.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 50 U.S.C. § 3912 because this action arises under laws of the United States.

5. This Court has personal jurisdiction over Defendant Ditech pursuant to Washington's long-arm statute, Wash. Rev. Code § 4.28.185, because Defendant Ditech transacts business within the State of Washington.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this district.

**PARTIES**

7. Plaintiff Brian S. Nelson is a retired Major from the Army National Guard. On October 29, 2005, he entered active-duty military service in Tacoma, Washington under a call to active service pursuant to Presidential Executive Order 13223 of September 14, 2001, and served on active duty continuously until he was honorably discharged effective August 31, 2015. He resides in Lakewood, Washington, and has resided in Lakewood, Washington since at least August 2005.

8. Defendant Ditech Financial, LLC is a mortgage company that lends and services residential mortgages throughout the United States. Ditech is a wholly-owned subsidiary of Walter Investment Mortgage Corp. Walter Investment acquired Green Tree Servicing LLC, a mortgage loan servicing company, in 2011 and consolidated Green Tree Servicing LLC and Ditech Mortgage Corp., a former subsidiary of Walter Investment, to form Ditech Financial LLC in or about August 2015. Defendant Ditech is a Delaware limited liability company, now headquartered in Fort Washington, Pennsylvania, is licensed to conduct business in the State of Washington, and, through itself and its predecessor, does conduct and has conducted business in the State of Washington.

**CLASS ACTION ALLEGATIONS**

9. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

(A) All current and former servicemembers
    (1) who entered military service within the meaning of the Servicemembers Civil Relief Act;
    (2) who, prior to such period of military service, incurred by themselves or jointly with their spouses an interest-bearing obligation or liability in the nature of a mortgage that is or was serviced by Ditech Financial, LLC or its predecessor;
    (3) who, no later than 180 days after such period of military service, provided

written notice and a copy of his or her military orders;

  (4) where, for any part of such period of military service or the one year thereafter, (a) the interest rate per year on the Mortgage was not reduced to 6% or (b) the interest incurred on the Mortgage at a rate in excess of 6% per year was not forgiven; and

 (B) The spouses of such servicemembers who jointly incurred an interest-bearing obligation or liability in the nature of a mortgage that is or was serviced by Ditech Financial, LLC or its predecessor.

10. Excluded from the Class are all former or current servicemembers who previously reached settlements with or judgments against Defendant resolving or releasing any claims arising during the Class Period under the SCRA related to inadequate interest-rate reductions for periods of military leave.

**Impracticality of Joinder**

11. The Class is so numerous that joinder of all members is impracticable. Based on its website in 2016, Defendant purchased and funded 126,000 home loans in 2015 alone, and in 2016 served over 2.1 million home loans. Defendant Ditech's website asks potential borrowers to identify "if you are active or retired military," and provides a link to Defendant's webpage about the SCRA.[1] Based on the number of servicemembers who have entered military service and the number of veterans in the United States, and based on Dietch's marketing focus on servicemembers and veterans, the members of the Class members likely consists of at least hundreds of current and former servicemembers and their spouses.

12. As Defendant does business throughout the nation, with offices in locations, and home loan specialists licensed in states, across the country, the members of the Class are geographically dispersed throughout the nation. Upon information and belief, Defendant and its

---

[1] https://www.ditech.com/homeowner-resources/servicemembers-civil-relief-act-scra/

1 predecessors have funded and acquired, and Defendant continues to fund and acquire, rights and
2 liabilities relating to residential mortgages on residences geographically dispersed throughout the
3 United States. Defendant serves residential mortgages on residences geographically dispersed
4 throughout the United States.

**Commonality**

6  13. The central question in this case concerns Defendant Ditech's policy or practice of failing to reduce the contractual interest rates on Class Members' mortgage loans to 6% for their periods of active-duty military service effective as of the date they were called to military service and whether that violated the rights of members of the Class under the SCRA. Specifically, Ditech's policy or practice fails to cap interest rates on the mortgage loans of Class members at 6% for their entire periods of military service, regardless of whether the servicing rights on their loans were transferred to Defendant after their periods of military service had began. Additionally, to the extent that interest was incurred at a rate in excess of 6% per year during a period of military service that would otherwise be incurred but for the SCRA's required interest rate cap, Defendant Ditech failed to forgive such interest. Another central question concerns whether the SCRA requires. As these issues appear to arise from a uniform policy of not applying the SCRA's 6% interest rate cap to military service preceding the transfer of the servicing rights to Defendant, answers to these questions will produce common answers.

19  14. Because the interest charged on mortgage loans of Class members at a rate in excess of 6% per year for any part of their periods of military service was based on a uniform policy, issues regarding relief are common. Even if the ultimate allocation of recovery to Class members is taken into account, the unifying issue concerning the policy is Defendant's failure to apply the 6% interest rate to military service preceding the transfer of the servicing rights to Defendant. To the extent that the policy is found to have violated the SCRA, the determination as to losses to members of the proposed Class will be a formulaic one. As Defendant acted in a systematic manner with respect to the Class, all members of the Class suffered the same type of injury based on a single policy and

resolving the claims of the Class will be based on common legal and factual questions.

**Typicality**

15. Plaintiff's claims are typical of the other members of the proposed Class. Plaintiff challenges a policy or practice by which Defendant failed to cap interest rate on servicemembers' mortgage loans at the statutory 6% maximum for military service including preceding the transfer of the servicing rights on those loans to Ditech.

16. The relief sought consists primarily of (1) a declaration establishing that Defendant violated the SCRA by failing to cap interest rates on servicemembers' mortgage loans at the statutory 6% maximum for their entire periods of military service; and (2) an order requiring Defendant to apply the 6% interest rate cap to such periods.

**Adequacy**

17. Plaintiff will fairly and adequately protect the interests of other members of the Class. Plaintiff is aware of no conflict with any other member of the Class. Plaintiff understands his obligation as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill their duties as class representatives.

18. Defendant has no unique defenses against Plaintiff that would interfere with his representation of the Class.

19. Plaintiff's counsel are experienced in federal court class-action litigation, including class-action litigation involving rights and benefits of servicemembers and veterans.

**Rule 23(b)(2)**

20. This action is properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

21. Defendant is alleged to have violated the SCRA in a manner as to all members of the Class by failing to apply the SCRA's 6% interest rate cap as to all members of the Class.  As such, Defendant has acted or refused to act on grounds that apply generally to the Class. The primary relief sought by the Complaint is a determination that Defendant Ditech's failure to adjust the interest rate

violates the SCRA and an order reforming the loan contracts for the Class to reflect the maximum interest rate permitted by the SCRA and an injunction preventing Ditech from enforcing an interest rate higher than that permitted by the SCRA. As a result, the Complaint seeks final declaratory and injunctive relief for the Class as a whole.

22. Any monetary relief sought either flows from and/or is incidental to the declaratory and injunctive relief ordered and can be calculated in a simple, objective, and mechanical manner. Any monetary relief is tied directly to an injunction or declaration that requires reformation of the contracts and the amounts owed under the contract and the return of any amounts overpaid as a result of Ditech charging in excess of the amount permitted by the SCRA. These amounts owed the Class can be calculated by comparing, for each period of active-duty military service, the contractual interest rate with the 6% interest rate that should have been applied and refunding the difference to the Class along with an associated interest overpayment and/or principal inflation (or other fees or other charges).

**Rule 23(b)(3)**

23. This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

24. The questions of law and fact common to members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy. By resolving the common issues described above in a single class proceeding, each member of the proposed Class will receive a determination of whether Defendant violated the SCRA by failing to apply the statutory 6% interest rate cap and of the remedy that should be provided under the SCRA.

25. Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations.

26. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Defendant conduct business in this District, and, as a result of

1 Defendant's significant operations in this district, at least a portion of the Class likely resides in this district.

27. There are no difficulties in managing this case as a class action.

**FACTUAL ALLEGATIONS**

28. Plaintiff Brian Nelson and his wife, Kelly Nelson, ("the Nelsons") purchased a residence located in Lakewood, Washington in September 1999.

29. On August 8, 2005, the Nelsons jointly executed a Home Equity Line of Credit ("the HELOC Loan") in the amount of the $90,000.00 with Equity 1 Lenders Group, a California company. The HELOC that the Nelsons executed was an Adjustable-Rate Mortgage ("ARM") loan with interest at an initial simple-interest Annual Percentage Rate ("APR") of 11.75%. Pursuant to the terms of the HELOC Loan, the contractual APR has never dropped to 6% or below at any time between October 29, 2005 and the present.

30. On October 14, 2005, Mr. Nelson was ordered to active-duty military service pursuant to Presidential Executive Order 13223 of September 14, 2001, commanding him to report for active service in Tacoma, Washington on October 29, 2005.

31. On October 29, 2005, Mr. Nelson entered active-duty military service.

32. On January 22, 2007, Mr. Nelson was issued a military order commanding that he would be transferred to the Camp Murray station in Tacoma, Washington effective January 19, 2007. On January 19, 2007, while on active duty, he was transferred as ordered.

33. On June 6, 2008, Mr. Nelson was issued a military order commanding that he be transferred back to his original home station in Tacoma, Washington effective June 7, 2008. On June 7, 2008, while on active duty, he was transferred as ordered.

34. On March 19, 2012, Mr. Nelson was issued a military order stating that he was transferred to Camp Murray in Tacoma, Washington effective March 1, 2012. On March 1, 2012, while on active duty, he was transferred as ordered.

35. On November 6, 2012, Mr. Nelson was issued a military order stating that he was

relieved from duty as Intelligence Officer and reassigned as Intelligence Plans Officer effective November 1, 2012. On November 1, 2012, while on active duty, he was reassigned as ordered.

36. On July 8, 2014, Mr. Nelson was issued a military order stating that he was attached to Specific Operations Detachment-Pacific effective July 1, 2014. On July 1, 2014, while on active duty, he was attached as ordered.

37. On June 9, 2015, Mr. Nelson was issued a military order commanding that he be retired from active duty effective August 31, 2015. On August 31, 2015, he was retired from active duty as ordered.

38. From October 29, 2005 until his retirement on August 31, 2015, Mr. Nelson served on active duty continuously until his retirement.

39. Prior to October 29, 2005, Mr. Nelson informed all of his creditors in writing, including Equity 1 Lenders Group, that he would enter active-duty military service beginning October 29, 2005.

40. Although informed of Mr. Nelson's entry into active-duty military service, Equity 1 Lenders Group did not reduce the APR on the HELOC Loan to 6% as required by the SCRA.

41. Sometime prior to October 1, 2013, the servicing rights on the Nelsons' HELOC Loan were transferred to IndyMac, which later became OneWest Bank.

42. On or about October 1, 2013, the servicing rights on the Nelsons' HELOC Loan were transferred from OneWest Bank to Green Tree Servicing LLC.

43. In approximately August 2015, Green Tree Servicing LLC and Ditech Mortgage Corp. were consolidated to form Ditech.  In approximately August 2015, Ditech became the loan servicer of the Nelsons' HELOC Loan.

44. Upon information and belief, since at least 2005, Green Tree Servicing LLC, Ditech Mortgage Corp. and/or Ditech has acquired, and Ditech continues to acquire, rights and liabilities relating to other interest-bearing mortgage loans, including but not limited to the servicing rights on those loans.

Class Action Complaint                                   Page 9

45. At no time between October 1, 2013 and August 31, 2015, did either Green Tree Servicing LLC or Ditech, reduce the APR on the Nelsons' HELOC Loan to 6% for any part of Mr. Nelson's period of military service between October 29, 2005 and August 31, 2015.

46. Shortly after his retirement from active service on August 31, 2015, Mr. Nelson contacted Ditech by phone and informed Ditech that the APR on the HELOC Loan had never been reduced to the SCRA's 6% interest rate cap at any time between October 29, 2005 and August 31, 2015 when he was on active duty in the Army. Ditech's customer service representative responded to Mr. Nelson that Ditech did not provide interest rate reduction of that kind.

47. Shortly after that phone call, Mr. Nelson called Ditech again to request the interest rate reduction provided for under the SCRA for the period of his active-duty military service between October 29, 2005 and August 31, 2015. Again, Ditech refused to provide the interest rate reduction.

48. According to Ditech's October 2015 monthly statement to the Nelsons, the outstanding balance of their HELOC Loan was $73,431.00.

49. By letter dated November 6, 2015, Ditech informed Mr. Nelson that the interest rate of 6% would be applied to the HELOC Loan for the period beginning October 1, 2013, "the date the servicing of your loan transferred to Ditech," through 12 months after August 31, 2015, the date he was retired from active duty in the Army. Ditech also informed Mr. Nelson that the principal balance of the loan had been reduced to $68,522.80 as of November 6, 2015.

50. By letter dated February 16, 2016, Mr. Nelson again requested Ditech to apply the SCRA's 6% interest rate cap to the entire period of his military service from October 29, 2005 through August 31, 2015. He also attached to his letter a copy of all of the military orders calling him to active service during that period.

51. By letter dated February 23, 2016, Ditech responded to Mr. Nelson's request pursuant to the SCRA that "[t]he account is protected from the date we began servicing the loan to 12 months after your discharge date of August 31, 2015." Ditech did not apply the SCRA's 6% interest rate cap

on the Nelsons' HELOC Loan for the period from October 29, 2005 through September 30, 2013 as requested. Ditech did not forgive the interest incurred on the Nelsons' HELOC Loan at a rate in excess of 6% at any time between October 29, 2005 and September 30, 2013.

52.     As a result of Ditech's failure to apply the SCRA's 6% interest rate cap to the Nelsons' HELOC Loan effective as of October 29, 2005, the first day he was called to active service, the principal balance of the loan has been and continues to be inflated, and the monthly interest on the loan has been and continues to be excessive and improper.

## COUNT I

### (Violation of SCRA § 207, 50 U.S.C. § 3937)

53.     Plaintiffs repeat and incorporate all allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     Subsection (a)(1) of the SCRA's maximum interest rate provision, codified at 50 U.S.C. § 3937, provides that "[a]n obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent – (A) during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage; or (B) during the period of military service, in the case of any other obligation or liability."

55.     50 U.S.C. § 3937(a)(2) provides that "[i]nterest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in [§ 3937(a)(1)] is forgiven."

56.     50 U.S.C. § 3937(b)(1) provides that, for an obligation or liability to be subject to the SCRA's 6% interest rate cap, "the servicemember shall provide to the creditor written notice and a copy of the military orders calling the servicemember to military service and any orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service."

57. 50 U.S.C. § 3937(b)(2) requires that, upon receipt of written notice and a copy of the military orders, the interest rate on the servicemember' loan must be reduced to 6% "effective as of the date on which the servicemember is called to military service."

58. 50 U.S.C. § 3937(d)(1) defines "interest" to include "service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability."

59. By adopting and applying a policy or practice of not lowering the interest rates per year on Class members' mortgage loans to 6% or by not forgiving the interest incurred at a rate in excess of 6% per year for the parts of their periods of military service preceding the transfer of the servicing on their loans to Defendant, Defendant has violated and continue to violate the SCRA.

60. Ditech was aware of the provisions and requirements of the SCRA and the SCRA rights of Plaintiff and members of the Class if for no other reason that Plaintiff Nelson requested on at least three different occasions after the conclusion of his military service – twice by telephone and at least once in writing – that he was entitled to have the interest on the terms of his loan reduced under the SCRA to 6% during the entire period of his military service. Despite Plaintiff expressly informed Defendant Ditech of his SCRA rights, Defendant Ditech refused to reduce the interest rate on his loan during the entire period of his military service. Instead, Defendant Ditech continued to follow and apply their policy in conscious and/or reckless disregard of Plaintiff's rights.

61. Because Defendant applied its policy in violation of the SCRA, Plaintiff and the Class paid more interest on their interest-bearing obligations or liabilities than they would have paid had Defendant complied with the SCRA. Because Defendant applied its policy in violation of the SCRA, the principal balances of Plaintiff's and Class members' loan accounts have been and continued to be inflated, and the monthly interest on their obligations or liabilities has been and continues to be excessive and improper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on Count I and respectfully request that this Court award the following relief:

A. Declare that Defendant Ditech's policy refusing to apply the SCRA's 6% interest rate cap to servicemembers' interest-bearing loans for military service preceding the transfer of the servicing rights on those loans to Defendant Ditech violates the SCRA;

B. Enjoin Defendant Ditech from enforcing any policy or practice that fails to apply the SCRA's 6% interest rate cap with respect to servicemembers and their spouses in the future;

C. Reform the mortgage loans of Plaintiff and the Class effective as of the date on which members of the Class were called into military service to apply the SCRA's 6% interest rate cap to those loans and to require Defendant Ditech to forgive all interest incurred at a rate in excess of 6% per year;

D. Require Defendant Ditech to pay any other appropriate relief, including the return of any monetary overpayment, any other monetary damages, including any compensatory and punitive damages;

E. Require Defendant to pay pre- and post-judgment interest;

F. Require Defendant to pay the costs of the action, including reasonable attorneys' fees under the SCRA, 50 U.S.C. § 4042(b), and/or order payment of reasonable fees and expenses in this action to Plaintiff's counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this action;

G. Grant such other and further relief as the Court deems proper, just and/or equitable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

1 | DATED July 28, 2017

*[signature]*

Matthew Z. Crotty, WSBA 39284
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave. Ste. 409
Spokane, WA  99201
Telephone:  (509) 850-7011
Email: matt@crottyandson.com

R. Joseph Barton (*pro hac vice to be filed*)
Block & Leviton LLP
1735 20th Street, NW
Washington, DC 20009
Tel: 202-734-7046
Email: jbarton@blockesq.com

Vincent Cheng (*pro hac vice to be filed*)
Block & Leviton LLP
610 16th Street, Suites 214-16
Oakland CA 94612
Tel: 415-968-8999
Email: vincent@blockesq.com

Thomas G. Jarrard
Law Office of Thomas Jarrard, PLLC
1020 N. Washington St.
Spokane, WA 99201
Telephone: (425) 239-7290
Email: TJarrard@att.net

*Attorneys for Plaintiffs*