**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| BRIAN S. NELSON, on behalf of himself and all others similarly situated, ) | **CASE NO. 17-CV-05582-RBL** |
| Plaintiffs, ) | **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SERVICEMEMBERS CIVIL RELIEF ACT, 50 U.S.C. § 3901 ET SEQ. – CLASS ACTION** |
| vs. ) | |
| DITECH FINANCIAL, LLC, ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

Plaintiffs Brian S. Nelson, by and through his undersigned counsel, allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.    This is an action brought pursuant to the Servicemembers Civil Relief Act of 2003 ("the SCRA"), 50 U.S.C. § 3901 *et seq.*, on behalf of a class of current and former servicemembers whose statutory rights to a 6% interest rate cap under the SCRA have been violated in connection with mortgage loans incurred by them and their spouses before they were called to active service. The lawsuit challenges Defendant Ditech Financial, LLC's policy or practice of refusing to apply the SCRA's 6% interest rate cap for periods of military service, including with respect to those periods preceding the transfer of the servicing rights on those loans to Defendant.

2.    The SCRA mandates that any obligation or liability that bears interest at a rate in excess of 6 percent per year that is incurred by a servicemember (including one

incurred jointly with the servicemember's spouse) shall not bear interest at a rate in excess of 6 percent for the entire period of military service and one year thereafter, effective as of the date the servicemember was called to active service so long as the servicemember provides written notice and a copy of his or her military orders within 180 days of the end of military service. Despite this requirement, Defendant Ditech has adopted a policy or practice of not applying the statutory interest rate cap to mortgage loans for military service at least preceding the transfer of the servicing rights on those loans to Defendant. As a result of Defendant's policy and practice, servicemembers and their spouses in the Class either paid more interest on their loans or Ditech is seeking to require them to pay more interest than allowed under the SCRA. As a result of Defendant's policy and practice, the principal balances of the loans have been and continue to be inflated, and the interest incurred on them has been and continues to be excessive and improper under the SCRA.

3.     This action seeks a declaration that Defendant's policy violates the SCRA, an injunction barring Ditech from continuing to apply the policy in the future, and an order to reform the  mortgage loans of Class members in accordance with the SCRA's 6% interest rate cap effective as of the date on which the Class member was called to military service, to forgive interest incurred at a rate in excess of 6% per year for any part of his or her period of military service, and/or to pay monetary damages.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 50 U.S.C. § 3912 because this action arises under laws of the United States.

5.     This Court has personal jurisdiction over Defendant Ditech pursuant to Washington's long-arm statute, Wash. Rev. Code § 4.28.185, because Defendant Ditech transacts business within the State of Washington.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this district.

## PARTIES

7.      Plaintiff Brian S. Nelson is a retired Major from the Army National Guard.  On October 29, 2005, he entered active-duty military service in Tacoma, Washington under a call to active service pursuant to Presidential Executive Order 13223 of September 14, 2001, and served on active duty continuously until he was honorably discharged effective August 31, 2015. He resides in Lakewood, Washington, and has resided in Lakewood, Washington since at least August 2005.

8.      Defendant Ditech Financial, LLC is a mortgage company that lends and services residential mortgages throughout the United States. Ditech is a wholly-owned subsidiary of Walter Investment Mortgage Corp. Walter Investment acquired Green Tree Servicing LLC, a mortgage loan servicing company, in 2011 and consolidated Green Tree Servicing LLC and Ditech Mortgage Corp., a former subsidiary of Walter Investment, to form Ditech Financial LLC in or about August 2015. Defendant Ditech is a Delaware limited liability company, now headquartered in Fort Washington, Pennsylvania, is licensed to conduct business in the State of Washington, and, through itself and its predecessor, does conduct and has conducted business in the State of Washington.

## CLASS ACTION ALLEGATIONS

9.      Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

(A)     All current and former servicemembers

      (1)     who entered military service within the meaning of the Servicemembers Civil Relief Act;

      (2)     who, prior to such period of military service, incurred by themselves or jointly with their spouses an interest-bearing obligation or liability in the nature of a mortgage that is or was serviced by Ditech Financial, LLC or its predecessor;

1   (3)   who, no later than 180 days after such period of military service,

2         provided written notice and a copy of his or her military orders;

3   (4)   where, for any part of such period of military service or the one year

4         thereafter, (a) the interest rate per year on the Mortgage was not

5         reduced to 6% or (b) the interest incurred on the Mortgage at a rate in

6         excess of 6% per year was not forgiven; and

7   (B)  The spouses of such servicemembers who jointly incurred an interest-bearing

8        obligation or liability in the nature of a mortgage that is or was serviced by

9        Ditech Financial, LLC or its predecessor.

10  10.   Excluded from the Class are all former or current servicemembers who

11  previously reached settlements with or judgments against Defendant resolving or releasing

12  any claims arising during the Class Period under the SCRA related to inadequate interest-

13  rate reductions for periods of military leave.

14  **Impracticality of Joinder**

15  11.   The Class is so numerous that joinder of all members is impracticable. Based

16  on its website in 2016, Defendant purchased and funded 126,000 home loans in 2015

17  alone, and in 2016 served over 2.1 million home loans. Defendant Ditech's website asks

18  potential borrowers to identify "if you are active or retired military," and provides a link to

19  Defendant's webpage about the SCRA.[1] Based on the number of servicemembers who

20  have entered military service and the number of veterans in the United States, and based

21  on Dietch's marketing focus on servicemembers and veterans, the members of the Class

22  members likely consists of at least hundreds of current and former servicemembers and

23  their spouses.

24  12.   As Defendant does business throughout the nation, with offices in locations,

25

26  [1] https://www.ditech.com/homeowner-resources/servicemembers-civil-relief-act-scra/

1   and home loan specialists licensed in states, across the country, the members of the Class

2   are geographically dispersed throughout the nation. Upon information and belief, Defendant

3   and its predecessors have funded and acquired, and Defendant continues to fund and

4   acquire, rights and liabilities relating to residential mortgages on residences geographically

5   dispersed throughout the United States. Defendant serves residential mortgages on

6   residences geographically dispersed throughout the United States.

7           **Commonality**

8           13.     The central question in this case concerns Defendant Ditech's policy or

9   practice of failing to reduce the contractual interest rates on Class Members' mortgage

10  loans to 6% for their periods of active-duty military service effective as of the date they

11  were called to military service and whether that violated the rights of members of the Class

12  under the SCRA. Specifically, Ditech's policy or practice fails to cap interest rates on the

13  mortgage loans of Class members at 6% for their entire periods of military service,

14  regardless of whether the servicing rights on their loans were transferred to Defendant after

15  their periods of military service commenced. Additionally, to the extent that interest was

16  incurred at a rate in excess of 6% per year during a period of military service that would

17  otherwise be incurred but for the SCRA's required interest rate cap, Defendant Ditech failed

18  to forgive such interest. As these issues appear to arise from a uniform policy of not

19  applying the SCRA's 6% interest rate cap to military service preceding the transfer of the

20  servicing rights to Defendant, answers to these questions will produce common resolution.

21          14.     Because the interest charged on mortgage loans of Class members at a rate

22  in excess of 6% per year for any part of their periods of military service was based on a

23  uniform policy, issues regarding relief are common. Even if the ultimate allocation of

24  recovery to Class members is taken into account, the unifying issue concerning the policy

25  is Defendant's failure to apply the 6% interest rate to military service preceding the transfer

26  of the servicing rights to Defendant. To the extent that the policy is found to have violated

the SCRA, the determination as to losses to members of the proposed Class will be a formulaic one. As Defendant acted in a systematic manner with respect to the Class, all members of the Class suffered the same type of injury based on a single policy and resolving the claims of the Class will be based on common legal and factual questions.

**Typicality**

15.     Plaintiff's claims are typical of the other members of the proposed Class. Plaintiff challenges a policy or practice by which Defendant failed to cap interest rate on servicemembers' mortgage loans at the statutory 6% maximum for military service including preceding the transfer of the servicing rights on those loans to Ditech.

16.     The relief sought consists primarily of (1) a declaration establishing that Defendant violated the SCRA by failing to cap interest rates on servicemembers' mortgage loans at the statutory 6% maximum for their entire periods of military service; and (2) an order requiring Defendant to apply the 6% interest rate cap to such periods.

**Adequacy**

17.     Plaintiff will fairly and adequately protect the interests of other members of the Class.  Plaintiff is aware of no conflict with any other member of the Class. Plaintiff understands his obligation as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill their duties as class representatives.

18.     Defendant has no unique defenses against Plaintiff that would interfere with his representation of the Class.

19.     Plaintiff's counsel are experienced in federal court class-action litigation, including class-action litigation involving rights and benefits of servicemembers and veterans.

**Rule 23(b)(2)**

20.     This action is properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

1      21.    Defendant is alleged to have violated the SCRA in a manner as to all

2 members of the Class by failing to apply the SCRA's 6% interest rate cap as to all

3 members of the Class.  As such, Defendant has acted or refused to act on grounds that

4 apply generally to the Class. The primary relief sought by the Complaint is a determination

5 that Defendant Ditech's failure to adjust the interest rate violates the SCRA and an order

6 reforming the loan contracts for the Class to reflect the maximum interest rate permitted by

7 the SCRA and an injunction preventing Ditech from enforcing an interest rate higher than

8 that permitted by the SCRA.  As a result, the Complaint seeks final declaratory and

9 injunctive relief for the Class as a whole.

10     22.    Any monetary relief sought either flows from and/or is incidental to the

11 declaratory and injunctive relief ordered and can be calculated in a simple, objective, and

12 mechanical manner. Any monetary relief is tied directly to an injunction or declaration that

13 requires reformation of the contracts and the amounts owed under the contract and the

14 return of any amounts overpaid as a result of Ditech charging in excess of the amount

15 permitted by the SCRA. These amounts owed the Class can be calculated by comparing,

16 for each period of active-duty military service, the contractual interest rate with the 6%

17 interest rate that should have been applied and refunding the difference to the Class along

18 with an associated interest overpayment and/or principal inflation (or other fees or other

19 charges).

20 **Rule 23(b)(3)**

21     23.    This action is also properly maintainable as a class action under Rule 23(b)(3)

22 of the Federal Rules of Civil Procedure.

23     24.    The questions of law and fact common to members of the Class predominate

24 over questions affecting only individual members and a class action is superior to other

25 available methods for the fair and efficient resolution of this controversy. By resolving the

26 common issues described above in a single class proceeding, each member of the

1   proposed Class will receive a determination of whether Defendant violated the SCRA by

2   failing to apply the statutory 6% interest rate cap and of the remedy that should be provided

3   under the SCRA.

4       25.    Upon information and belief, there are no other pending lawsuits in which

5   members of the Class have raised similar allegations.

6       26.    This is an appropriate forum for these claims because, among other reasons,

7   jurisdiction and venue are proper, Defendant conduct business in this District, and, as a

8   result of Defendant's significant operations in this district, at least a portion of the Class

9   likely resides in this district.

10       27.    There are no difficulties in managing this case as a class action.

11   **FACTUAL ALLEGATIONS**

12       28.    Plaintiff Brian Nelson and his wife, Kelly Nelson, ("the Nelsons") purchased a

13   residence located in Lakewood, Washington in September 1999.

14       29.    On August 8, 2005, the Nelsons jointly executed a Home Equity Line of Credit

15   ("the HELOC Loan") in the amount of the $90,000.00 with Equity 1 Lenders Group, a

16   California company. The Nelsons incurred a debt under the HELOC when, prior to Nelson's

17   October 29, 2005, call to active duty, they withdrew funds under the account.  The HELOC

18   that the Nelsons executed was an Adjustable-Rate Mortgage ("ARM") loan with interest at

19   an initial simple-interest Annual Percentage Rate ("APR") of 11.75%. Pursuant to the terms

20   of the HELOC Loan, the contractual APR has never dropped to 6% or below at any time

21   between October 29, 2005 and at least October 1, 2013.

22       30.    On October 14, 2005, Mr. Nelson was ordered to active-duty military service

23   pursuant to Presidential Executive Order 13223 of September 14, 2001, commanding him

24   to report for active service in Tacoma, Washington on October 29, 2005.

25       31.    On October 29, 2005, Mr. Nelson entered active-duty military service.

26       32.    On January 22, 2007, Mr. Nelson was issued a military order commanding

that he would be transferred to the Camp Murray station in Tacoma, Washington effective January 19, 2007. On January 19, 2007, while on active duty, he was transferred as ordered.

33.     On June 6, 2008, Mr. Nelson was issued a military order commanding that he be transferred back to his original home station in Tacoma, Washington effective June 7, 2008. On June 7, 2008, while on active duty, he was transferred as ordered.

34.     On March 19, 2012, Mr. Nelson was issued a military order stating that he was transferred to Camp Murray in Tacoma, Washington effective March 1, 2012. On March 1, 2012, while on active duty, he was transferred as ordered.

35.     On November 6, 2012, Mr. Nelson was issued a military order stating that he was relieved from duty as Intelligence Officer and reassigned as Intelligence Plans Officer effective November 1, 2012. On November 1, 2012, while on active duty, he was reassigned as ordered.

36.     On July 8, 2014, Mr. Nelson was issued a military order stating that he was attached to Specific Operations Detachment-Pacific effective July 1, 2014. On July 1, 2014, while on active duty, he was attached as ordered.

37.     On June 9, 2015, Mr. Nelson was issued a military order commanding that he be retired from active duty effective August 31, 2015. On August 31, 2015, he was retired from active duty as ordered.

38.     From October 29, 2005 until his retirement on August 31, 2015, Mr. Nelson served on active duty continuously until his retirement.

39.     Prior to October 29, 2005, Mr. Nelson informed all of his creditors in writing, and with copies of his military orders, including Equity 1 Lenders Group, that he would enter active-duty military service beginning October 29, 2005.

40.      Although informed of Mr. Nelson's entry into active-duty military service, Equity 1 Lenders Group did not reduce the APR on the HELOC Loan to 6% as required by

1 | the SCRA.

2 |     41.     Sometime prior to October 1, 2013, the servicing rights on the Nelsons'

3 | HELOC Loan were transferred to IndyMac, which later became OneWest Bank.

4 |     42.     On or about October 1, 2013, the servicing rights on the Nelsons' HELOC

5 | Loan were transferred from OneWest Bank to Green Tree Servicing LLC.

6 |     43.     In approximately August 2015, Green Tree Servicing LLC and Ditech

7 | Mortgage Corp. were consolidated to form Ditech.  In approximately August 2015, Ditech

8 | became the loan servicer of the Nelsons' HELOC Loan.

9 |     44.     Upon information and belief, since at least 2005, Green Tree Servicing LLC,

10 | Ditech Mortgage Corp. and/or Ditech has acquired, and Ditech continues to acquire, rights

11 | and liabilities relating to other interest-bearing mortgage loans, including but not limited to

12 | the servicing rights on those loans.

13 |     45.     At no time between October 1, 2013 and August 31, 2015, did either Green

14 | Tree Servicing LLC or Ditech, reduce the APR on the Nelsons' HELOC Loan to 6% for any

15 | part of Mr. Nelson's period of military service between October 29, 2005 and August 31,

16 | 2015.

17 |     46.     Shortly after his retirement from active service on August 31, 2015, Mr.

18 | Nelson contacted Ditech by phone and informed Ditech that the APR on the HELOC Loan

19 | had never been reduced to the SCRA's 6% interest rate cap at any time between October

20 | 29, 2005 and August 31, 2015 when he was on active duty in the Army. Ditech's customer

21 | service representative responded to Mr. Nelson that Ditech did not provide interest rate

22 | reduction of that kind.

23 |     47.     Shortly after that phone call, Mr. Nelson called Ditech again to request the

24 | interest rate reduction provided for under the SCRA for the period of his active-duty military

25 | service between October 29, 2005 and August 31, 2015. Again, Ditech refused to provide

26 | the interest rate reduction.

48.     According to Ditech's October 2015 monthly statement to the Nelsons, the outstanding balance of their HELOC Loan was $73,431.00.

49.     By letter dated November 6, 2015, Ditech informed Mr. Nelson that the interest rate of 6% would be applied to the HELOC Loan for the period beginning October 1, 2013, "the date the servicing of your loan transferred to Ditech," through 12 months after August 31, 2015, the date he was retired from active duty in the Army. Ditech also informed Mr. Nelson that the principal balance of the loan had been reduced to $68,522.80 as of November 6, 2015.

50.     In Ditech's November 6, 2015 letter to Nelson regarding Nelson's request for interest rate reduction under the SCRA, Ditech identified itself as "Creditor: Ditech Financial LLC ("Ditech")" with respect to the Nelsons' loan account.

51.     By letter dated February 16, 2016, Mr. Nelson again requested Ditech to apply the SCRA's 6% interest rate cap to the entire period of his military service from October 29, 2005 through August 31, 2015. He also attached to his letter a copy of all of the military orders calling him to active service during that period.

52.     By letter dated February 23, 2016, Ditech responded to Mr. Nelson's request pursuant to the SCRA that "[t]he account is protected from the date we began servicing the loan to 12 months after your discharge date of August 31, 2015." Ditech did not apply the SCRA's 6% interest rate cap on the Nelsons' HELOC Loan for the period from October 29, 2005 through September 30, 2013 as requested. Ditech did not forgive the interest incurred on the Nelsons' HELOC Loan at a rate in excess of 6% at any time between October 29, 2005 and September 30, 2013.

53.     In its February 23, 2016 and July 27, 2016 letters to Plaintiff regarding the expiration of the interest rate reduction that it claimed to have granted under the SCRA, Ditech again identified itself as "Creditor: Ditech Financial LLC ("Ditech").

54.     On or about June 30, 2017, Nelson refinanced the HELOC Loan. As part of

---

Amended Class Action
Complaint

1  the refinance Nelson paid Ditech $61,678.16. As a result of the refinance Ditech ceased

2  serving as Nelson's lender (or agent of Nelson's lender) and Nelson's lender became

3  Tristar Finance, Inc.

4       55.    As a result of Ditech's failure to apply the SCRA's 6% interest rate cap to the

5  Nelsons' HELOC Loan effective as of October 29, 2005 (the first day he was called to

6  active service), Nelson paid excess interest from approximately October 29, 2005, through

7  November 6, 2015, although Ditech (in a November 6, 2015 letter to Nelson) stated that it

8  would retroactively apply the 6% interest cap effective October 1, 2013.

9       56.    During the entirety or almost the entirety of the interest-only period of the

10  HELOC Loan with Ditech, Nelson made interest-only payments under the terms of the

11  HELOC Loan. According to these terms, the Annual Percentage Rate ("APR") for the loan,

12  which was an adjustable rate, was equal to the highest prime rate published in *The Wall*

13  *Street Journal* as of the first business day of each calendar month plus a "Margin" of 5.5%.

14  Based on an estimated original principal balance of $90,000 and the variable APR under

15  the terms of the HELOC Loan, Nelson calculates the monthly interest-only payment

16  amounts at the contractual APR and the monthly interest-only payment amounts at the

17  SCRA's 6% maximum interest rate. By comparing these two sets of amounts, Nelson

18  estimates the excess interest paid during the interest-only period to be approximately

19  $23,000. Payment of this $23,000 excess interest had the effect of increasing the pay-off

20  amount which, in turn, ultimately resulted in Nelson paying Ditech a higher pay-off amount

21  when Nelson refinanced the HELOC Loan in June 2017.

22       57.    Based on a $90,000 unpaid principal balance as of the beginning of the

23  repayment period (i.e. the period when Nelson was required to make payments on the

24  principal), the APR was 8.75% under the terms of the HELOC Loan from September 2010

25  through September 2013.  Using the difference of 8.75% and the SCRA's 6% interest rate

26  cap Nelson (taking into account Ditech's failure to forgive the excess interest) incurred and

1  paid approximately $6,000 to $8,000 in excess interest during the repayment period until
2  June 2017 as a result of Ditech's failure to apply the SCRA interest rate cap between
3  September 2010 and September 2013.

4        58.    The effect of Ditech's failure to apply the SCRA's 6% interest rate cap prior to
5  October 1, 2013 increased the balance on the HELOC loan, causing Nelson to pay more in
6  interest than he would have while Ditech owned and/or serviced the loan.  Correspondingly,
7  the effect of Ditech's failure to apply the SCRA 6% interest rate cap prior to October 1,
8  2013 increased the HELOC Loan's pay-off amount when Nelson refinanced.  Had Ditech
9  applied the SCRA 6% interest cap between the October 29, 2005 and October 1, 2013, the
10 pay-off amount would have been approximately $29,000 to $31,000 less (hereinafter the
11 "payoff difference"). As a result, Ditech received approximately $29,000 to $31,000 more
12 when Nelson refinanced than what it would have received had Ditech applied the SCRA
13 6% interest rate cap between the October 29, 2005 and October 1, 2013.  Also, Nelson
14 continues to pay excess interest to his new lender as a result of Ditech failing to apply the
15 SCRA 6% interest rate cap between the October 29, 2005 and October 1, 2013.

16       59.    In the case of the Nelsons' HELOC Loan, to the extent that Ditech was not
17 the creditor or lender that owned the loan at the time Ditech serviced it, Ditech was that
18 creditor or lender's agent as illustrated by the following:

19             a)     Ditech calculated the interest charged and monthly amounts due on
20                    the Nelsons' HELOC Loan, and collected monthly payments from
21                    them.
22             b)     Ditech's customer service was the only available direct contact with
23                    which Plaintiff communicated regarding all aspects of their loan,
24                    including interest rate reduction.
25
26

1
2
3

    c)    Ditech reviewed and determined Plaintiff's request for interest rate reduction under the SCRA and obtained and reviewed the military orders submitted by Plaintiff.

4
5
6

    d)    Ditech was the payee to whom the payoff amount for the Nelsons' HELOC Loan, including both all outstanding principal balance and interest, was made when the loan was refinanced about June 2017.

7
8
9
10
11
12
13
14
15
16
17

60.    As the communications that Nelson received from Ditech were largely form communications identifying Ditech as the entity with whom the borrower should interact and communicate, to the extent that Ditech was not the creditor or lender that owned the loans of other class members at the time Ditech serviced their loans, Ditech was the agent of the creditors or lenders of those loans for engaging in the same or similar activities. As the loan servicer, Ditech, acting on behalf of the creditors or lenders, was responsible for communicating with borrowers regarding all aspects of their loans, calculating interest and monthly payment amounts for those loans, and collecting monthly payments and crediting them to borrowers' accounts, as well as reviewing and determining requests by borrowers to reduce interest rates on their loans under the SCRA and obtaining and reviewing military orders submitted by borrowers.

18
19

## COUNT I

## (Violation of SCRA § 207, 50 U.S.C. § 3937)

20
21

61.    Plaintiffs repeat and incorporate all allegations contained in the foregoing paragraphs as if fully set forth herein.

22
23
24
25
26

62.    Subsection (a)(1) of the SCRA's maximum interest rate provision, codified at 50 U.S.C. § 3937, provides that "[a]n obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent – (A) during the period of military

1 service and one year thereafter, in the case of an obligation or liability consisting of a

2 mortgage, trust deed, or other security in the nature of a mortgage; or (B) during the period

3 of military service, in the case of any other obligation or liability."

4       63.    50 U.S.C. § 3937(a)(2) provides that "[i]nterest at a rate in excess of 6

5 percent per year that would otherwise be incurred but for the prohibition in [§ 3937(a)(1)] is

6 forgiven."

7       64.    50 U.S.C. § 3937(b)(1) provides that, for an obligation or liability to be subject

8 to the SCRA's 6% interest rate cap, "the servicemember shall provide to the creditor written

9 notice and a copy of the military orders calling the servicemember to military service and

10 any orders further extending military service, not later than 180 days after the date of the

11 servicemember's termination or release from military service."

12       65.    50 U.S.C. § 3937(b)(2) requires that, upon receipt of written notice and a copy

13 of the military orders, the interest rate on the servicemember' loan must be reduced to 6%

14 "effective as of the date on which the servicemember is called to military service."

15       66.    50 U.S.C. § 3937(d)(1) defines "interest" to include "service charges, renewal

16 charges, fees, or any other charges (except bona fide insurance) with respect to an

17 obligation or liability."

18       67.    By adopting and applying a policy or practice of not lowering the interest rates

19 per year on Class members' mortgage loans to 6% or by not forgiving the interest incurred

20 at a rate in excess of 6% per year for the parts of their periods of military service preceding

21 the transfer of the servicing on their loans to Defendant, Defendant has violated and

22 continue to violate the SCRA.

23       68.    Ditech was aware of the provisions and requirements of the SCRA and the

24 SCRA rights of Plaintiff and members of the Class if for no other reason that Plaintiff

25 Nelson requested on at least three different occasions after the conclusion of his military

26 service – twice by telephone and at least once in writing – that he was entitled to have the

1  interest on the terms of his loan reduced under the SCRA to 6% during the entire period of

2  his military service. Despite Plaintiff expressly informed Defendant Ditech of his SCRA

3  rights, Defendant Ditech refused to reduce the interest rate on his loan during the entire

4  period of his military service. Instead, Defendant Ditech continued to follow and apply their

5  policy in conscious and/or reckless disregard of Plaintiff's rights.

6        69.    Because Defendant applied its policy in violation of the SCRA, Plaintiff and

7  the Class paid more interest to Defendant on their interest-bearing obligations or liabilities

8  than they would have paid had Defendant complied with the SCRA.  Because Defendant

9  applied its policy in violation of the SCRA, the principal balances of Plaintiff's and Class

10  members' loan accounts have been and continued to be inflated, and the monthly interest

11  on their obligations or liabilities has been and continues to be excessive and improper.

12  **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiff prays that judgment be entered against Defendant on Count

14  I and respectfully request that this Court award the following relief:

15       A.    Declare that Defendant Ditech's policy refusing to apply the SCRA's 6%

16  interest rate cap to servicemembers' interest-bearing loans for military service preceding

17  the transfer of the servicing rights on those loans to Defendant Ditech violates the SCRA;

18       B.    Enjoin Defendant Ditech from enforcing any policy or practice that fails to

19  apply the SCRA's 6% interest rate cap with respect to servicemembers and their spouses

20  in the future;

21       C.    Reform the mortgage loans of Plaintiff and the Class effective as of the date

22  on which members of the Class were called into military service to apply the SCRA's 6%

23  interest rate cap to those loans and to require Defendant Ditech to forgive all interest

24  incurred at a rate in excess of 6% per year, including any arrangements with any entities

25  who refinanced the Class Members' loans owned or serviced by Ditech;

26       D.    Require Defendant Ditech to pay any other appropriate relief, including the

1  return of any monetary overpayment, any other monetary damages, including any

2  compensatory and punitive damages;

3      E.      Require Defendant to pay pre- and post-judgment interest;

4      F.      Require Defendant to pay the costs of the action, including reasonable

5  attorneys' fees under the SCRA, 50 U.S.C. § 4042(b), and/or order payment of reasonable

6  fees and expenses in this action to Plaintiff's counsel on the basis of the common benefit

7  and/or common fund doctrine out of any money or benefit recovered for the Class in this

8  action;

9      G.      Grant such other and further relief as the Court deems proper, just and/or

10  equitable.

11  **<u>JURY DEMAND</u>**

12      Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff

13  demands a trial by jury for all causes of action and issues for which trial by jury is available.

14

15

16

17

18

19

20

21

22

23

24

25

26

1  DATED November 22, 2017

2                                          /s/ Matthew Z. Crotty
                                           Matthew Z. Crotty, WSBA 39284
3                                          Crotty & Son Law Firm, PLLC
                                           905 W. Riverside Ave. Ste. 409
4                                          Spokane, WA  99201
                                           Telephone:  (509) 850-7011
5                                          Email: matt@crottyandson.com

6                                          R. Joseph Barton (*pro hac vice*)
7                                          Block & Leviton LLP
                                           1735 20th Street, NW
8                                          Washington, DC 20009
                                           Tel: 202-734-7046
9                                          Email: jbarton@blockesq.com

10                                         Vincent Cheng (*pro hac vice*)
                                           Block & Leviton LLP
11                                         610 16th Street, Suites 214-16
                                           Oakland CA 94612
12                                         Tel: 415-968-8999
                                           Email: vincent@blockesq.com
13
                                           Thomas G. Jarrard
14                                         Law Office of Thomas Jarrard, PLLC
                                           1020 N. Washington St.
15                                         Spokane, WA 99201
                                           Telephone: (425) 239-7290
16                                         Email: TJarrard@att.net

17
                                           *Attorneys for Plaintiffs*
18

19

20

21

22

23

24

25

26

Amended Class Action            Page 18
Complaint

**CERTIFICATE OF SERVICE**

I certify that on November 22, 2017, I filed the above-captioned document with the Court via the Court's CM/ECF system which will cause the attorneys who have appeared in this action to be served with this document.

Dated this November 22, 2017.

CROTTY & SON LAW FIRM, PLLC

*/s/ Matthew Z. Crotty*
MATTHEW Z. CROTTY
905 W. Riverside Ave. Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011
Email: matt@crottyandson.com
Attorneys for Plaintiff

Amended Class Action
Complaint