HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN S. NELSON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

DITECH FINANCIAL, LLC,

Defendant.

CASE NO. C17-5582RBL

ORDER DENYING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Ditech Financial LLC's Motion to Dismiss [Dkt. #30]. Plaintiff Brian Nelson sued his loan servicer, Ditech, claiming it violated the Servicemembers Civil Relief Act (SCRA) when it refused to forgive excess interest collected on a home equity loan during Nelson's nearly ten years of active duty in the National Guard. *See* 50 U.S.C. § 3937. Ditech moves to dismiss, arguing that it is not liable for overcharges made by other loan servicers, prior to Ditech's purchase of Nelson's loan.

**I. BACKGROUND**

Nelson opened a $90,000 adjustable rate Home Equity Line of Credit (HELOC) at Equity 1 Lenders Group in August 2005. On October 14, 2005, he was ordered to report for active military duty in two weeks. Sometime before he reported, he borrowed funds against the HELOC

and informed Equity 1 that he would report for active duty on October 29, 2005. The initial interest rate on the borrowed funds was 11.75%.

The SCRA[1] requires lenders to charge active duty borrowers no more than 6% interest on a variety of loans. Loans secured by the service member's home are limited to 6% during active duty and for one year thereafter. Any interest in excess of the limit "is forgiven." 50 U.S.C. § 3937(a)(1)(A).

Equity 1 was therefore obligated to reduce Nelson's interest rate to 6% while he was on active duty. It did not make this adjustment, and instead continued to charge him 11.75% (the initial rate), with periodic fluctuations tracking the prime rate. Nelson remained on active duty for nearly 10 years. During that time, his loan was sold to different loan servicers at least five times. All of the servicers, including the servicer at the time Nelson retired, Ditech, charged far more than 6%. Nelson retired from active duty on August 31, 2015.

Nelson asked Ditech to forgive the excess interest he had paid during active duty. Ditech agreed that *it* would not charge him more than 6%, and forgave the excess from the date it purchased and began servicing the loan—October 2013—until one year after he retired. But Ditech refused to forgive the excess interest Nelson paid to *prior* loan servicers, claiming it was not responsible for *its* failure to comply with the SCRA.

Nelson sued. He claims Ditech routinely violates the SCRA by denying service members' claims for reduced interest when the excess interest was charged before Ditech serviced the loan. He seeks to represent a class of similarly situated Ditech customers seeking Declaratory and Injunctive relief, reformation of contracts and damages.

---

[1] The SCRA was passed in 2003, to clarify and strengthen protections that date to the eve of World War II, under the Soldiers' and Sailors' Civil Relief Act of 1940.

1      Ditech seeks dismissal with prejudice and without leave to amend. It argues that Nelson
2  cannot plausibly allege that Ditech did anything to *cause* him to overpay interest from 2005 to
3  2013, and that the SCRA does not makes the successor servicer liable for the breaches of its
4  "wholly unrelated" predecessors. It emphasizes that Nelson did not assert (and his complaint
5  does not factually support) a breach of contract claim. It argues that he cannot effectively amend
6  it to do so by arguing breach of contract in his responsive brief.
7      Nelson argues that he as plausibly alleged facts supporting an SCRA claim. He
8  emphasizes the SCRA's purpose—to protect active duty service members—and the fact that
9  Courts uniformly hold that it is to be broadly and liberally construed to that end.

## II. LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

### III. ANALYSIS

The issue is whether the SCRA requires the borrower to chase down each lender or servicer that overcharged him, or whether he can recover the entire excess from his current servicer (which presumably could then recover a portion of it from the prior servicers).

Ditech's primary argument is that Nelson has not and cannot plausibly allege causation: he must, and cannot, tie his damage to the "precise" defendant that caused it. Ditech argues that causation is a "limiting factor" for SCRA claims and that Nelson cannot allege that Ditech caused him harm because Equity 1 and the other loan servicers caused him to pay excess interest, and he concedes Ditech did not.

It relies on *Palaciosreal v. Indem. Co. of California, Inc.*, 2013 WL 12139138, at *5 (C.D. Cal. Oct. 21, 2013). But *Palaciosreal* held only that a creditor seeking to collect in excess of 6% interest is not liable under the SCRA unless the plaintiff can plausibly allege "pecuniary harm." The plaintiff there never made *any* payments, and thus did not pay excess interest. A similar rationale led to the dismissal of an SCRA claim in *Newton v. Bank of McKenney*, 2012 WL 1752407, at *8 (E.D. Va. May 16, 2012) upon which Ditech also relies. The lender there "charged" excess interest while the servicemember was on active duty, but before she paid it, her lender retroactively recalculated the interest she owed. She did not incur any "pecuniary harm" and her emotional distress claim was dismissed as not recoverable in a breach of contract action. Nelson has plausibly alleged that he incurred pecuniary harm in the form of excess interest payments.

Ditech also relies on *Kimball v. Orlans Assocs. P.C.*, 651 Fed. App'x 477, 480 (6th Cir. 2016). The servicemember there sued both his current lender and his former lender, when the current lender sought to foreclose in violation of the SCRA. The Court held unremarkably that the predecessor was not liable for the *successor's* violation of the SCRA, because it "had no hand in the foreclosure."

None of these cases is directly on point, and, in the Court's view, none sheds much light on the issue presented here.

Nelson argues that he has plausibly alleged that Ditech's failures *did* cause him harm; if it had correctly (re-)calculated the interest payments he made to its predecessors, his principal balance would have been greatly reduced. He also points to the SCRA's broad purpose and ample authority holding that it is to be applied liberally. *See Brewster v SunTrust Mortgage*, 742 F.3d 876 (9th Cir. 2014). Nelson argues that *Brewster* supports his theory that a successor servicer can be liable for "continuing" SCRA violations originally committed by the predecessor. But as Ditech points out, Brewster's current lender itself actively tried to collect the previsouly-imposed improper fees, while Ditech has not sought to collect excess interest charged by its predecessors.

Nelson similarly has not identified a case directly supporting his claim that he can sue his current servicer for the interest rate cap violations of its predecessor(s); this is a novel claim arising out of a somewhat novel factual situation.

The Motion to dismiss is DENIED, for two reasons.

First, the SCRA clearly (and uniquely) envisions retroactively relief. The servicemember can trigger the cap—effectively reforming a partially-performed contract—by notifying his

lender of his right to an interest rate cap within 180 days *after* he leaves active duty, and that reformation is effective form the date he entered active service:

> (1) Written notice to creditor
>
> In order for an obligation or liability of a servicemember to be subject to the interest rate limitation in subsection (a), the servicemember shall provide to the creditor written notice and a copy of the military orders calling the servicemember to military service and any orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service.
>
> (2) Limitation effective as of date of order to active duty
>
> Upon receipt of written notice and a copy of orders calling a servicemember to military service, the creditor shall treat the debt in accordance with subsection (a), effective **as of the date on which the servicemember is called to military service**.

50 U.S.C. § 3937(b)(1) (emphasis added). This powerful right would be greatly undermined if a sale could alter the date to which the "reformation" was effective. There is nothing in the statute to support this reading.

Second, Ditech's claim that its predecessors are "unrelated" or "wholly unrelated" to it is not accurate. Ditech chose to purchase Nelson's loan from one of those parties, presumably because it determined it could make money from the loan. One voluntarily purchasing a contract with rights *and* obligations is not "unrelated" to his seller. Ditech purchased the loan—warts and all—including the potential for a retroactive interest rate reduction. It bought the problem, and, unlike Nelson, it had a choice in the matter. The record on a motion to dismiss does not include the purchase contract, but Ditech essentially concedes that Nelson could have pled a contract claim—its only argument is that he should not be permitted to do so in his Responsive brief.

But dismissal with prejudice is not the corrective where a defective complaint could be fixed. On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

The Motion to Dismiss is DENIED. Nelson is GRANTED Leave to Amend his complaint to assert a breach of contract claim.

IT IS SO ORDERED.

Dated this 27th day of April, 2018.

Ronald B. Leighton
United States District Judge